# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY McGANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12 C 9193 |
| ) | |
| CAROLYN COLVIN, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jeffrey McGann has appealed the decision of the Social Security Administration (SSA) to partially deny his request for disability insurance benefits. An administrative law judge (ALJ) determined that McGann was disabled as of July 21, 2009 but was not disabled between May 14, 2007, the date he claimed for the onset of his disability, and July 21, 2009. Both McGann and the Commissioner of Social Security have moved for summary judgment. For the reasons stated below, the Court grants McGann's motion, denies the Commissioner's motion, and remands the case to the SSA for further consideration.

## Background

McGann was born on July 21, 1959. On May 1, 2009, he applied for disability insurance benefits (DIB), alleging disability as of May 1, 2001 due to diabetes, hepatitis C, and neuropathy in his left foot. McGann later amended the date of his disability onset to May 14, 2007. His DIB application was denied initially and on reconsideration.

1

McGann challenged the denial, and a hearing was held before an ALJ in December 2010.

The ALJ issued a decision that was partially favorable to McGann, finding that he became disabled on July 21, 2009, when he turned fifty years old and his age category changed under applicable disability regulations. The ALJ found, however, that McGann was not disabled from May 14, 2007 through July 20, 2009. The SSA's Appeals Council denied his appeal, and McGann then filed this lawsuit to challenge the agency's decision.

The ALJ applied the five-step sequential evaluation process provided by the applicable Social Security regulations to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). The ALJ found that McGann had not engaged in substantial gainful activity since May 14, 2007 and that since that date, he had the severe impairments of "diabetes mellitus with diabetic neuropathy and nephropathy, stage III chronic kidney disease, hepatitis C, and obesity . . . ." R. 25. The ALJ determined that McGann had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[1] except that he could not operate foot controls, balance or climb ramps, stairs, ladders, ropes, or scaffolds, could only occasionally stoop, crouch, kneel, or crawl, and should avoid all exposure to wetness, humidity, environmental irritants, moving machinery, and operation of an automobile. The ALJ said that McGann was limited to work at the sedentary exertional

---

[1] Social Security regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

level because of neuropathy and the effects of hepatitis C and nephropathy, as well as obesity.

In determining McGann's RFC, the ALJ gave very significant weight to the opinion of Dr. Jeffrey Ryan, a physician who conducted a consultative examination of McGann in November 2010. The ALJ noted that Dr. Ryan examined McGann and found that Dr. Ryan's opinion was consistent with and supported by the record and the results of his examination and that he had provided a detailed and logical explanation for his findings. Dr. Ryan diagnosed McGann with diabetic neuropathy and nephropathy with stage III chronic kidney disease, as well as hepatitis C with no evidence of end organ disease. Dr. Ryan concluded that McGann could occasionally lift and carry up to ten pounds and "could sit for six hours in an eight-hour work day, could stand for two hours, and could walk for one hour," subject to the same posture and environmental limitations listed above. R. 29.

In December 2010, Dr. Hareth Raddawi, one of McGann's treating physicians, filled out a "Diabetes Mellitus Residual Functional Capacity Questionnaire" that included an assessment of McGann's ability to perform work related activities. R. 572-76. Dr. Raddawi noted that McGann suffered from hepatitis C, diabetes, and renal failure. He determined that McGann could stand, walk, or sit for a total of two hours each in an eight-hour workday. Dr. Raddawi also stated that McGann needed to have the option to alternate between sitting and standing and that he should keep his legs elevated to thirty degrees. He also determined that McGann could occasionally lift and carry ten pounds but frequently less than that and that he could occasionally stoop, crouch, squat, and climb ladders or stairs. Dr. Raddawi opined that McGann's conditions would

3

cause him to miss more than four days of work per month (the latter conclusion was misstated by the ALJ as a statement that McGann would miss more than five days per month). *Compare* R. 575 *with* R. 29.

The ALJ declined to give significant weight to Dr. Raddawi's assessment. He stated that "the extreme limitations suggested by Dr. Raddawi are not supported by [McGann's] treatment records." *Id.* The ALJ also stated that Dr. Raddawi had found that McGann could perform exertional and postural activities consistent with sedentary work and with the ALJ's assessment of McGann's RFC. The ALJ further stated that "Dr. Raddawi indicated that his opinion concerning [McGann's] limitations applied as far back as January 2007," citing for that proposition Dr. Raddawi's written assessment, Exhibit 15F, at page 5. R. 29. The ALJ rejected this opinion, stating that "it appears from the record that Dr. Raddawi did not begin treating [McGann] any earlier than August 2010, or four months before he rendered his opinion. There is no evidence that Dr. Raddawi reviewed any prior medical records that would support the retroactive date of his opinion." R. 29-30.

McGann testified at the hearing that during the relevant period, he worked part time at a family-owned restaurant, intermittently through mid-2009 and two to three days per week since July 2009. He performed administrative and managerial work and some bartending. R. 49-50. McGann testified that on two of his three work days, he would be sitting down nearly all day but would have to get up and walk for short periods. On the third work day, he would do more standing, which he found "very painful," requiring a good deal of recovery time after being on his feet most of the day. R. 57-58.

4

In his decision, the ALJ concluded that the fact that McGann was able to do this work, which the ALJ said involved "duties that would actually be categorized as greater than sedentary work," suggested that McGann would be able to perform less demanding sedentary work. R. 30.

McGann also suffers from recurring diarrhea, which was referenced in his medical record and was the subject of testimony at the hearing. The ALJ noted McGann's complaints of diarrhea, *see* R. 28, 30, but stated that "it appears that his diarrhea has either resolved completely or at least been greatly reduced between October 2007 and at least February 2008 and since January 2009." R. 30.

The ALJ found that Dr. Ryan's examination findings were consistent with a finding that McGann could perform sedentary work, with the additional functional limitations previously mentioned. *Id.* Based on this and other evidence, the ALJ found, as noted earlier, that McGann could perform sedentary work, with the limitations previously discussed.

After determining McGann's RFC, the ALJ found that McGann had been unable to perform his past relevant work since his claimed disability onset date of May 14, 2007. Finally, at step five of the sequential analysis, the ALJ determined that prior to July 21, 2009—the date of McGann's fiftieth birthday—jobs involving sedentary work existed in significant numbers in the national economy that he could have performed, considering his age, education, work experience, and RFC. R. 31. At the hearing, the ALJ asked the vocational expert, James Radke, whether there are jobs in the national economy for an individual with McGann's age, education, work experience, and RFC. R. 31, 63-67. Radke responded that given all of those factors, the hypothetical

5

individual would have been able to perform the requirements of unskilled sedentary occupations such as general office clerk (2900 jobs in northeastern Illinois), receptionist (2900 jobs), and order clerk (750 jobs). R. 66. The ALJ found that this represented a significant number of jobs in the regional economy and by extension the national economy. R. 31.

In sum, the ALJ concluded that prior to his fiftieth birthday on July 21, 2009, McGann was capable of making a successful adjustment to work that existed in significant numbers in the national economy and thus was not disabled prior to that date. After that date, however, the ALJ determined that his age category changed for purposes of the disability assessment, and that in consideration of the relevant factors, there were not jobs in significant numbers in the national economy that McGann could perform.

**Discussion**

When, as in this case, the SSA's Appeals Council declines to review an ALJ's decision, the ALJ's decision constitutes the Commissioner's final decision. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). A court reviews the Commissioner's decision to determine whether it was supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt*, 496 F.3d at 841 (internal quotation marks omitted). "[S]o long as, in light of all the evidence, reasonable minds could differ concerning whether the claimant is disabled, [a reviewing court] must affirm

6

the ALJ's decision denying benefits." *Id.* at 842 (internal quotation marks and brackets omitted).

## 1. The ALJ's consideration of Dr. Raddawi's opinion

McGann argues that the ALJ erred by not giving the proper weight to Dr. Raddawi's opinion regarding McGann's RFC. A treating physician's opinion that is supported by acceptable diagnostic techniques and is consistent with the record is generally entitled to 'controlling weight' under SSA regulations. *See* 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). An ALJ may, however, "discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schmidt*, 496 F.3d at 842 (internal quotation marks omitted). If an ALJ rejects a treating physician's opinion, he must give a sound explanation for why he rejected it and instead adopted a non-treating physician's opinion. *Roddy*, 705 F.3d at 636.

McGann argues that the ALJ made a fundamental factual error in reviewing Dr. Raddawi's opinion. "When the decision of [the first-line] tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse . . . ." *Walters v. Astrue*, 444 F. App'x 913, 920 (7th Cir. 2011). *See also Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

In fact, the ALJ made two significant factual mistakes in dealing with Dr. Raddawi's disability opinion that render his treatment of that opinion unreliable. The first is the one that McGann cites in challenging the adverse ruling. The ALJ rejected Dr.

7

Raddawi's statement that his opinion regarding McGann's limitations applied retroactively to an earlier date on the ground that "Dr. Raddawi did not begin treating [McGann] any earlier than August 2010, or four months before he rendered his opinion." R. 29-30. That was quite simply wrong, as Dr. Raddawi's treatment records—which were part of the record before the ALJ—plainly showed. Specifically, those records showed on their face that Dr. Raddawi's treatment of McGann extended back to 2006. *See* R. 557-71 (Hearing Ex. 14F, identified in the record index as Dr. Raddawi's records).

Dr. Raddawi does not have the world's clearest handwriting, and it is conceivable that the ALJ misread a notation in his functional capacity report and then simply disregarded the underlying medical records. In the first line of the report, on a blank for "frequency and length of contact," Dr. Raddawi appears to have written, "@ 3-4 mos," by which he likely meant that he saw McGann every three to four months:

1. Frequency and length of contact: _@ 3-4 M̸s̸_

R. 572. Given the lack of clarity in the handwriting, the ALJ might have read this as indicating that Dr. Raddawi had only seen McGann *for* three or four months. One way or another, however, the records—which the ALJ had—made it abundantly clear that Dr. Raddawi had been treating McGann for four years. Had the ALJ correctly understood the length of Dr. Raddawi's treatment of McGann, he could not have summarily rejected the doctor's opinion on the basis stated in his ruling.

The ALJ made a second factual error regarding Dr. Raddawi's opinion. As indicated, the ALJ said that "Dr. Raddawi indicated that his opinion concerning [McGann's] limitations applied as far back as January 2007." R. 29. But that is not the

8

case. As indicated, Dr. Raddawi's penmanship leaves something to be desired, but when asked in the questionnaire for the earlier date on which his description of McGann's limitation applies, Dr. Raddawi (who signed the questionnaire in December 2010) wrote "1-2 yrs," *not* "January 2007":

> 14. What is the earliest date that the description of *symptoms and limitations* in this questionnaire applies?   1-2 yrs

Looking at the questionnaire, one can see how the handwriting might, on a cursory review, appear to say 1-2007, but careful inspection makes it clear that is not what it says. R. 576. Though this error, on the surface, might seem to cut the other way, the ALJ's discussion of Dr. Raddawi's opinion suggests that the "fact" that the doctor said his opinion about McGann was retroactive to January 2007 contributed to the ALJ's view that Dr. Raddawi was exaggerating matters.

These fundamental factual errors regarding when Dr. Raddawi had treated McGann and his opinion regarding McGann tainted the ALJ's assessment of whether the opinion should receive controlling weight as the opinion of a treating physician. Though the ALJ identified other purported flaws in Dr. Raddawi's opinion, *see* R. 29, his ruling, read as a whole, makes it apparent that the errors the Court has identified contributed to his assessment of the doctor's opinion. In particular, the ALJ's analysis does not suggest that he would have discounted Dr. Raddawi's opinion had he correctly understood that Dr. Raddawi had been treating McGann for four years and that his views regarding McGann's existing functional capacity went back only as much as two years, not four years. *See generally Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (discussion of when an ALJ's factual error in making a credibility determination is harmless); *see also Walters*, 444 F. App'x at 919-20 (same).

9

The Commissioner also attempts to defend the ALJ's decision not to give significant weight to Dr. Raddawi's opinion by arguing that the opinion was inconsistent with the opinions of two other physicians who reviewed McGann's records. In particular, the Commissioner references the conclusions of Drs. Bilinsky and Wabner, two state agency physicians who reviewed the record evidence and concluded that McGann could perform a range of light exertional work. *Id.* The ALJ, however, did not rely on either opinion and gave them only limited weight. *See* R. 28. In particular, he did not cite or reference them in rejecting Dr. Raddawi's opinion. Thus the Commissioner "cannot defend the ALJ's decision using this rationale directly, or by invoking an overly broad conception of harmless error, because the ALJ did not employ the rationale in his opinion." *Roddy*, 705 F.3d at 637; *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). To do so would violate the *Chenery* doctrine, that is, the long-established principle that a reviewing court cannot uphold an administrative order "unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943). Rather, a reviewing court must judge the correctness of the agency's action solely by the grounds that the agency invoked. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

**2.    The ALJ's consideration of McGann's diarrhea prior to 2009**

McGann also argues that the ALJ failed to give appropriate consideration to his diarrhea in determining his RFC. The ALJ noted McGann's complaints of chronic diarrhea in August 2007, intermittent diarrhea in December 2007, and diarrhea three to four times per day as of August 2008. The ALJ also found, however, that in January 2009 McGann denied having diarrhea and that in November 2010 he did not mention

10

diarrhea to Dr. Ryan during his consultative examination. *See* R. 28. In summing up, the ALJ stated that "[a]s for claimant's complaints of diarrhea, it appears that his diarrhea has either resolved completely or at least been greatly reduced between October 2007 and at least February 2008 (Ex. 14F/6, 8; 17F/6) and since January 2009 (Ex. 4F/45, 46)." R. 30.[2]

There are problems with this analysis. The first involves the support cited by the ALJ for the proposition that McGann's diarrhea was resolved or greatly reduced between October 2007 and February 2008. One of the exhibits the ALJ cited, Exhibit 17F, is non-existent. No Exhibit 17F appears in the record, and the listing of exhibits compiled by the SSA stops with Exhibit 16F and includes no Exhibit 17F. *See* R. 33-36. Another exhibit page that the ALJ cited, Exhibit 14F, page 6,[3] *see* R. 562, is dated December 2007, not October 2007, and it refers to "intermittent" diarrhea, which does not suggest the problem had been resolved. The other page of Exhibit 14F that the ALJ cited, page 8, *see* R. 564, concerns March 2008, not February 2008, and it is difficult to tell, given the sloppy handwriting, whether it says anything about diarrhea at all. The intervening page, Exhibit 14F at 5, *see* R. 563, does concern February 2008 and references diarrhea, but the reference is indecipherable – given the poor handwriting, one cannot say whether, like some other notations on the page, the symbol that

---

[2] Interestingly, one of the documents that ALJ cited for this purpose was Exhibit 14F, page 6, a treatment record by Dr. Raddawi. Thus even though the ALJ appears to have examined Dr. Raddawi's records documenting treatment of McGann during the 2007-08 time period, he disregarded those records in claiming, as discussed earlier, that Dr. Raddawi had not treated McGann prior to August 2010.

[3] The exhibit numbers and pages appear in the upper right corner of each document.

11

precedes the reference to diarrhea is an O with a slash through it (which might indicate absence of the condition) or something else altogether:



Perhaps more importantly, however, another record from the same doctor during the time period at issue in the present appeal, which the ALJ cited but did not discuss in reaching his conclusion, appears to indicate a recurrence of persistent diarrhea: in August 2008, McGann said he was experiencing diarrhea 3 to 4 times per day. *See* Ex. 14F at 10 (R. 566).[4]  The ALJ referenced the August 2008 treatment notes in the body of his decision, *see* R. 28, but he does not seem to have addressed it in finding that McGann's diarrhea had largely resolved during the relevant period. *See* R. 30 (quoted earlier). An ALJ's selective consideration of evidence, which is arguably part of the problem here, is grounds for reversal. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

More generally, McGann argues that even if one can accurately characterize diarrhea occurring three to four times daily as a problem that was largely "resolved," this frequency still would have required McGann to take periodic unscheduled breaks from any job that he held. McGann makes a colorable point when he contends that the unskilled sedentary jobs that the vocational expert identified in response to the ALJ's

---

[4] This is consistent with McGann's testimony at the hearing, mentioned by the ALJ in the body of his opinion, *see* R. 27, but likewise not addressed head-on, where McGann stated that there were days when he would be in the restroom every half hour and would wake up five or six times per night. *See* R. 59-60.

questions typically do not permit repeated unscheduled breaks.  And it does not appear that the questioning of the vocational expert, either by the ALJ or by McGann's attorney, took into account the effect of the need to take intermittent unscheduled breaks.  *See* R. 61-67 (a question was asked by McGann's attorney regarding the need to break every 30 minutes, but neither she nor the ALJ asked about the lesser frequency posited by the August 2008 treatment notes).  The ALJ that handles this case on remand should revisit this issue and should take care to do so in a way that zeroes in on the relevant period, May 2007 through July 2009.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [dkt. no. 18] but declines to award benefits for the relevant period because the evidence is not so one-sided that an award is the obvious result.  Rather, the appropriate course is a remand.  The Clerk is directed to enter judgment remanding the case to the Social Security Administration for further proceedings consistent with this decision.

_____
          MATTHEW F. KENNELLY
          United States District Judge

Date:  January 3, 2014